IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JIMMY DWAYNE RUSSELL                                          PLAINTIFF

        v.                        Civil No.  15-5112

SHERIFF TIM HELDER, Washington
County, Arkansas; SERGEANT BYRD;
and CHAPLAIN EARL ADAMS                                       DEFENDANTS


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  The Plaintiff, Jimmy

Dwayne Russell, proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Varner Unit of the Arkansas Department of

Correction.  At the times relevant to this case, Plaintiff was incarcerated in the Washington

County Detention Center (WCDC).  Plaintiff maintains Defendants violated his constitutional

rights when they failed to provide him a diet in keeping with his religious beliefs.

Defendants have filed a Summary Judgment Motion (Doc. 19).  Plaintiff filed a response

(Doc. 23) to the Motion.  Additionally, on December 15, 2015, a hearing was held on the

Summary Judgment Motion to allow the Plaintiff to verbally respond to the Motion.  The Motion

(Doc. 19) is now ready for decision.

### 1.  Background

Plaintiff was booked into the WCDC on March 25, 2014.  When he was booked in,

Plaintiff listed his religion as Christian.  Plaintiff testified that, in truth, he is Wiccan and follows

a vegan diet which precludes the consumption of meat, dairy, eggs, or any product associated

-1-

with animals.  Plaintiff testified he did not list Wicca on the booking papers because he feared that he would be looked upon as an odd-ball.

Plaintiff testified that not all Wicca followers adhere to a vegan diet.  He testified there are different sects or groups, and some even go so far as to hunt.  Plaintiff stated that he was of the Gardnerian tradition, and members are given the choice as to whether or not they will adhere to a vegan diet.  Although a vegan diet is not strictly mandated, Plaintiff believes that his faith requires adherence to this diet.

On August 10, 2014, Plaintiff submitted his first request for a diet in accordance with his religion.  Plaintiff testified that prior to this date he did not know that an inmate could request a religious diet.  On this date, he noticed a place on the kiosk where a religious diet could be requested.  Chaplain Adams reassigned Plaintiff's request to food service.  (Doc. 1, p. 13)  Food service indicated he needed to talk to medical.  *Id.*  Medical reassigned his request to "religious diets."  *Id.* at p. 14.  Plaintiff asked who he needed to talk to about changing to a vegan diet.  *Id.* at p. 13.  Nurse Rhonda Bradley stated that the Chaplain had to approve a religious diet.  *Id.* at p. 15.  Nurse Vickery advised him that he had to go through Nurse Rhonda or the captain.  *Id.* at p. 18.  From March 25, 2014 to August 10, 2014, Plaintiff was on a regular diet.  Plaintiff testified that he traded food items with other inmates rather than eating non-vegan food.  He alleged that he lost twenty-three pounds doing this.  (Doc. 1, p. 13)

Plaintiff was called into the Chaplain's office on September 1, 2014.  Plaintiff testified that he was questioned about Wicca.  The Chaplain approved Plaintiff's request for a vegan diet in keeping with his Wicca faith; however, Plaintiff was listed as a vegetarian, and he received a vegetarian diet which included eggs and dairy.

-2-

On September 2, 2014, Plaintiff requested a diet with no meat, eggs, or dairy. On September 5, 2014, Plaintiff testified that Jennifer Laub, employed by Aramark (the contract food provider at the WCDC), told him they could meet his dietary requirements, but either the Chaplain or the medical staff would have to "list" him as vegan and not vegetarian. (Doc. 1, p. 16) Plaintiff testified that he submitted more than one request asking to be listed as a Vegan. He further testified that the Chaplain, at least three times, closed his request without responding.

On February 8, 2015, Plaintiff once again requested a vegan diet. Plaintiff testified that in response to this request the Chaplain advised him that the facility was not equipped to meet his dietary restrictions. Plaintiff testified he knew this was not true because Muslims were being assisted with Ramadan. Plaintiff indicated that after this request he started receiving eggs on almost all trays. Plaintiff attempted to trade food items with other inmates rather than eating non-vegan food. For example, he would trade eggs or macaroni and cheese for beans, potatoes, or fruit. He got his protein through bartering his food. On April 11, 2015, Plaintiff was taken off a vegetarian diet and put on a regular diet. Plaintiff testified that he never requested to be put back on a regular diet.

With respect to Sergeant Byrd, Plaintiff testified that he called the Plaintiff out in front of the whole pod of other inmates. Plaintiff did not want to talk about his faith or the vegan diet in front of others. Plaintiff felt discriminated against when he was singled out and interrogated about his religion. Plaintiff testified he never saw any Muslims called out. Sergeant Byrd did this on only one occasion.

With respect to Chaplain Adams, Plaintiff also felt he was being discriminated against. Plaintiff did not believe that either Chaplain Adams or Sergeant Byrd violated his rights by asking Plaintiff questions to determine what the beliefs of his faith were; however, at some point,

-3-

Plaintiff believed he was being mocked.  Plaintiff does not believe that Chaplain Adams maliciously refused him a vegan diet.

With respect to Sheriff Helder, Plaintiff testified that he did not believe the Sheriff was personally involved in deciding whether or not Plaintiff should receive a vegan diet.  Plaintiff did not know who sent Sergeant Byrd in to talk to him.  According to Plaintiff, the problem is that no one states who is responsible for making the decision on whether or not to provide a vegan or religious diet to an inmate.  Plaintiff testified he was first told to ask the medical staff, and then told to ask the kitchen, and finally told to ask the Chaplain.

### 2.  Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party. See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

-4-

believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

**3.  Discussion**

Defendants argue they are entitled to summary judgment because: (1) Plaintiff was not prohibited from exercising his religion; (2) neither Chaplain Adams' nor Sergeant Byrd's questions regarding the Vegan diet and his beliefs amount to a constitutional violation; (3) Defendants did not make the decision as to what diet the Plaintiff should receive; (4) Defendants are entitled to qualified immunity; and, (5) there is no basis for official capacity liability.

**A.  Section 1983**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and violated a right secured by the Constitution.  <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Dunham v. Wadley</u>, 195 F.3d 1007, 1009 (8th Cir.1999).  The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344 (1986).

**B.  Free Exercise of Religion**

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."  <u>Turner v. Safley</u>, 482 U.S. 78, 84 (1987).  "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987); <u>see also Cruz v. Beto</u>, 405 U.S. 319 (1972).  "The determination of what is a 'religious' belief or practice is more

-5-

often than not a difficult and delicate task . . . However, the resolution of that question is not to

turn upon a judicial perception of the particular belief or practice in question; religious beliefs

need not be acceptable, logical, consistent, or comprehensible to others in order to merit First

Amendment protection." Thomas v. Review Board of the Indiana Employment Security

Division, 450 U.S. 707, 714 (1981).

This right, however, is not without limitation. The Supreme Court has recognized

"incarceration brings about the necessary withdrawal or limitation of many privileges and

rights." O'Lone, 482 U.S. at 348. Like with the freedom to receive ideas, "the free exercise

right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison

authorities, so long as such regulations are 'reasonably related to legitimate penological

interests.'" Murphy v. Carroll, 202 F. Supp. 2d 421, 424 (D. Md. 2002) (quoting Turner, 482

U.S. at 89; O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-349 (1987); Cruz, 405 U.S. at 322));

see also Thomas v. Gunter, 32 F.3d 1258, 1259-60 (8th Cir. 1994).

"A prisoner need not be afforded his preferred means of practicing his religion as long

as he is afforded sufficient means to do so." Murphy v. Missouri Department of Corrections, 372

F.3d 979, 983 (8th Cir. 2004). With respect to the provision of religious diets, it has long been

held that "an individual's genuine and sincere belief in religious dietary practices warrants

constitutional protection." LaFevers v. Saffle, 936 F.2d 1117, 1119 (10th Cir. 1991); see also

Love v. Reed, 216 F.3d 682, 689 (8th Cir. 2000) ("prison inmates are entitled to reasonable

accommodation of their religious dietary needs"); McElyea v. Babbitt, 833 F.2d 196, 198 (9th

Cir. 1987) (inmates are entitled to a diet sufficient to sustain health and satisfy religious dictates).

The Supreme Court in Turner v. Safley, 482 U.S. 78, 89-91 (1987), set forth a

reasonableness test consisting of the following factors: (1) whether there exists a rational

-6-

connection between the prison policy or regulation and a legitimate governmental interest advanced as its justification; (2) whether there are alternative means of exercising the right notwithstanding the policy or regulations; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and, (4) whether there are ready, easy-to-implement alternatives that would accommodate the prisoner's rights.

### C.  Wicca and a Vegan Diet

Defendants do not challenge whether or not "Wicca" is a religion.  Defendants, however, do argue that Plaintiff has presented no proof that a vegan diet is part of the Wicca faith or that his belief was sincerely held.  I disagree.  While Plaintiff testified that you could be of the Wicca faith without following a vegan diet, he steadfastly maintained that he regarded a vegan diet as necessary for religious reasons.

Defendants point out that Plaintiff had a history of not adhering to a vegan diet. Immediately prior to his incarceration, Defendants note that Plaintiff had not practiced the diet from 2001 until 2014.  Even after he requested a vegan diet, Defendants state Plaintiff was not consistent in why he wanted the vegan diet - sometimes stating it was for religious reasons and other times saying it was for health reasons.  Plaintiff, however, stated that he gave medical reasons for having to be on that diet when he was told the medical staff would make that decision.  *Defts' Ex.* A-1, p. 158.

Further, from his kiosk requests, it appeared that Plaintiff ate macaroni and cheese and an egg and cheese sandwich, among other non-vegan things.  Defendants maintain that the Plaintiff's inconsistency on the issue of his diet is the best evidence that he is not being denied the opportunity to exercise a religious belief that is sincerely held.

Plaintiff was not temporarily denied a vegan diet.  He never received one at all.  His first request for a vegan diet was made on August 10, 2014.  Although Plaintiff was changed to a vegetarian diet for a period of time, September of 2014 to April of 2015, he was still being served eggs and dairy.  When he requested a vegan diet again in February of 2015, Plaintiff testified Chaplain Adams said the facility could not meet his dietary needs.  In April of 2015, he was taken off the vegetarian diet and put on regular food trays.  He was told he would be left on the diet he identified at intake.  He was also informed that special diets would no longer be served other than for medical reasons.  In May of 2015, Chaplain Adams advised the Plaintiff that he was no longer responsible for religious diets.

"[T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.... [I]t is not within the judicial function and judicial competence to inquire whether the [Plaintiff] . . . correctly perceived the commands of [his] faith.  Courts are not arbiters of scriptural interpretation."  <u>Thomas</u>, 450 U.S. at 715–16.  To the extent Defendants suggest that religious beliefs may not change over time, this argument is rejected.  For purposes of this motion, we will assume that Plaintiff sincerely holds a religious belief that he should adhere to a vegan diet.  His beliefs involve more than a mere dietary preference.

### D.  Sheriff Helder

Plaintiff testified that he did not believe the Sheriff was personally involved in deciding whether or not Plaintiff should receive a vegan diet.  He believes, however, that the Sheriff is responsible for creating a meaningful policy with respect to the provision of religious diets and for training detention center staff of the appropriate actions to be taken when a request for a religious diet is submitted.  Plaintiff also suggests that the WCDC discriminated against Wiccans while having no problem with offering religious diets to Muslims or to the Jewish.

-8-

AO72A
(Rev. 8/82)

In <u>Vinning-El v. Evans</u>, 657 F.3d 591, 593 (7th Cir. 2011), a similar argument was made. The argument was made that the chaplain's policy was to accommodate the dietary rules of organized faiths while not accommodating the dietary rules of personal faiths. The Seventh Circuit stated:

> A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself and cause trouble for his captors. And although sincerity rather than orthodoxy is the touchstone, a prison is still entitled to give *some* consideration to an organization's tenets. For the more a given person's professed beliefs differ from the orthodox beliefs of his faith, the less likely they are to be sincerely held. Very few people who identify themselves as Baptists sincerely believe that a halal or vegan diet is obligatory on religious grounds. Such belief isn't impossible, but it is sufficiently rare that a prison's chaplain could be skeptical and conduct an inquiry to determine whether the claim was nonetheless sincere.

*Id.* at 594. It stated if the Plaintiff's request was turned down for the "sole reason that Moorish Science does not make a vegan diet a tenet of religious faith, then [the chaplain] violated [the Plaintiff's] clearly established rights." *Id.*

In this case, Plaintiff testified he was first told to ask the medical staff, and then told to ask the kitchen, and finally told to ask the Chaplain. Once the Chaplain approved the diet, Plaintiff was provided with a vegetarian diet not a vegan diet. Plaintiff made repeated requests for his diet to be changed to a vegan one.

Later, he was told the Chaplain no longer had the responsibility of determining whether an inmate should receive a religious diet. In fact, Plaintiff was told special diets were no longer allowed except for those required for medical reasons.

Sheriff Helder may not be held liable on a theory of *respondeat superior.* <u>See e.g.</u>, <u>Wever v. Lincoln County, Neb.</u>, 388 F.3d 601, 606 (8th Cir. 2004). Under <u>Monell</u>, a plaintiff

-9-

AO72A
(Rev. 8/82)

must establish that the government's policy or custom inflicts the injury that the government as an entity is responsible for.  Monell v. Department of Social Services, 436 U.S. 658, 694-695 (1978).  "A municipality may be held liable for failure to train its employees when that failure can be shown to be deliberate indifference to the rights of others." Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000); see also Vaughn v. Greene County, 438 F.3d 845, (8th Cir. 2006) ("A supervisor may be held individually liable . . . if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.").

In this case, there is a question of fact as to whether Sheriff Helder's policies, training procedures, or supervision were so inadequate that they were likely to result in a constitutional violation.  WCDC personnel seemed to be utterly unaware of who had the authority to make a decision regarding religious diets.[1]

### E.  Chaplain Adams

Plaintiff asserts that Chaplain Adams questioned him about his religion and then told him that his request for a religious diet was approved.  When Plaintiff failed to receive a vegan diet, his requests were in large part ignored, being passed between the Chaplain, the  kitchen, the medical staff, jail personnel, and at times closed out without any response at all.  Eventually, Plaintiff was told that the Chaplain was no longer in charge of religious diets and that the facility would not accommodate his request.  Plaintiff's impression was that Chaplain Adams thought the Plaintiff was being dishonest about his diet.

---

[1] WCDC food service policy provides that "requests for special diets for religious reasons shall be forwarded to the Facility Administrator, or their designee, who shall consult with the Chaplain or local ministerial association regarding the appropriate action." *Defts' Ex.* A-2 at p. 2.

-10-

Based on the summary judgment record, there is a question of fact as to: whether the Chaplain determined that the Plaintiff has a sincere belief that his religion requires a vegan diet; whether the Chaplain approved Plaintiff to receive a vegetarian diet or a vegan diet; and, whether the religious dietary needs of other faiths were approved and accommodated. In short, from the record before the Court, we do not know what the Chaplain approved, when he did so, why he did so, and whether he had the final say in such matters.

### F.  Sergeant Byrd

With respect to Sergeant Byrd, Plaintiff testified that he questioned the Plaintiff in front of the entire housing unit about the Wicca religion and its dietary restrictions. Plaintiff was unfamiliar with some of the things Sergeant Byrd asked him about. Plaintiff stated he was humiliated and just told Sergeant Byrd to "forget it" for this reason.

On April 18, 2015, Plaintiff submitted a request stating he was now not even getting a vegetarian tray. He again requested a vegan diet. *Defts' Ex.* A-1, p. 227. Plaintiff asked that the request be forwarded "to whomever made the final decision concerning my religious diet." *Id.*

On April 22, 2015, Sergeant Byrd responded that the Wiccan belief does not require Plaintiff to be vegan or vegetarian. *Id.* Sergeant Byrd said that when he asked Plaintiff about his religion and his diet Plaintiff said to just "forget it." *Id.* Sergeant Byrd closed out the request. *Id.*

On April 23, 2015, Sergeant Byrd stated he had no personal conflict with any religion and had just been trying to verify some information. *Id.* at 228-229. He advised the Plaintiff that "we no longer serve special diets other than medical." *Id.* Sergeant Byrd then closed out the request.

-11-

It appears Sergeant Byrd was personally involved in deciding whether or not the Plaintiff should be provided a vegan diet.  Certainly, there is a question of fact as to whether Sergeant Byrd denied the Plaintiff a diet in keeping with his religious beliefs.

### G.  Qualified Immunity

"The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224 (1991) (quoting, Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)).  The inquiry is normally one of pure law.  J.H.H. v. O'Hara, 878 F.2d 240 (8th Cir. 1989).

"The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process."  Washington v. Normandy Fire Protection Dist., 272 F.3d 522, 526 (8th Cir. 2001).  First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendants'] conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194 (2001).  Second, the court must determine if the right was clearly established.  Washington, 272 F.3d at 256.

Taken in the light most favorable to the Plaintiff, I believe the facts alleged show that Defendants violated a constitutional right.  The Free Exercise Clause of the First Amendment extends to the right to a diet in keeping with the a person's chosen religion.  See e.g., Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014).  This right extends to prisoners.  Id.  If Plaintiff was denied a vegan diet because his beliefs differed from his church's leaders or from more orthodox religions, Defendants violated Plaintiff's constitutional rights.

Further, the right to a diet in keeping with one's religious beliefs was clearly established by 2014.  See e.g., Lovelace v. Lee, 472 F.3d 174, 198-99 (4th Cir. 2006) ("Under . . . the Free

-12-

Exercise Clause . . ., a prisoner has a clearly established  . . . right to a diet consistent with his

. . . religious scruples.") (internal quotation marks and citation omitted); <u>Colvin v. Caruso</u>, 605

F.3d 282, 290 (6th Cir. 2010) (Clearly established that prison administrators must provide an

adequate diet without violating the inmate's religious dietary restrictions); <u>Kind v. Frank</u>, 329

F.3d 979, 981 (8th Cir. 2003) ("It is well settled that jail and prison inmates have the right to be

provided with food sufficient to sustain them in good health and that satisfies the dietary laws

of their religion.") (internal quotation marks and citation omitted).  Under the circumstances of

this case, the Defendants are not entitled to qualified immunity.

### 4.  Conclusion

For the reasons discussed above, I recommend that Defendants' Motion for Summary

Judgment (Doc. 19) be **DENIED.**

**The parties have fourteen (14) days from receipt of this report and recommendation**

**in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely**

**objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the**

**district court.**

DATED this 18th day of May, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-13-

**AO72A**
**(Rev. 8/82)**